IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 9, 2006 Session

# STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v. A.C., ET AL.

**Appeal from the Juvenile Court for Hawkins County**
**No. HJ-05-1322    Herbert A. Holcomb, Judge**

---

### No. E2006-00747-COA-R3-PT - FILED NOVEMBER 2, 2006

---

The State of Tennessee, Department of Children's Services ("DCS") filed a petition to terminate the parental rights of A.C. ("Mother") to her three children, L.A.L.R., K.M.C., and R.S.C. Following a trial, the Juvenile Court determined that there was clear and convincing evidence that grounds existed to terminate Mother's parental rights pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1), (g)(2), and (g)(3). The Juvenile Court also determined that there was clear and convincing evidence that termination of Mother's parental rights was in the children's best interests. Mother appeals, claiming DCS failed to prove by clear and convincing evidence that grounds existed to terminate her parental rights. Mother also claims DCS failed to prove by clear and convincing evidence that termination of her parental rights would be in the best interests of the children. We affirm the Juvenile Court's judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

James F. Taylor, Rogersville, Tennessee, for the Appellant, A.C.

Michael E. Moore, Acting Attorney General and Reporter, and Elizabeth C. Driver, Assistant Attorney General, Nashville, Tennessee, for the Appellee, State of Tennessee, Department of Children's Services.

## OPINION

## Background

In October of 2005, DCS filed a petition to terminate Mother's parental rights to L.A.L.R., K.M.C., and R.S.C, ages 3, 1 and 1 respectively at the time the petition was filed.[1] In the petition, DCS alleged that R.S.C. had been in DCS custody since January of 2005, and L.A.L.R. and K.M.C. had been in DCS custody since February of 2005. As grounds for terminating Mother's parental rights, DCS alleged that: (1) Mother had abandoned the children by willfully failing to support them for more than four consecutive months immediately preceding the filing of the petition; (2) the children were dependent and neglected and Mother had made no reasonable effort to provide a suitable home for the children and it was unlikely that she would do so; (3) the children had been removed from Mother's home for more than six months by order of the court and the conditions which led to their removal still persisted; (4) Mother had failed to substantially comply with the statement of responsibilities contained in a permanency plan; and (5) continuation of the parent-child relationship would greatly diminish the children's chances of an early integration into a stable and permanent home. DCS also alleged that it was in the best interests of the children for Mother's parental rights to be terminated.

As to Mother's failure to comply with the statement of responsibilities contained in a permanency plan, DCS alleged, among other things, that: (1) although the plan required Mother to complete an alcohol and drug assessment and remain drug free, Mother failed five drug tests and tested positive for illegal drugs including methamphetamines, cocaine, and marijuana; (2) Mother did not have stable housing; (3) Mother was incapable of financially supporting herself, much less her children; (4) Mother continued to use drugs and had been incarcerated several times; and (5) Mother was employed for approximately two weeks, but she lost that job when she was incarcerated after being found in contempt of court for failing a drug test.

The trial was conducted on January 21, 2006, with the first witness being Rebecca Fletcher ("Fletcher"), the DCS caseworker assigned to Mother and her three children. Fletcher testified that in the four month period immediately preceding DCS filing the petition, Mother paid no child support. Fletcher stated that Mother knew that she was required to pay child support and that she had been ordered by the Juvenile Court to do so. Even though Mother was briefly employed in August of 2005, she never paid any child support. Fletcher stated there were seven team meetings after the first child initially came into DCS custody. Mother was present at all seven meetings and her obligation to pay child support was discussed at these meetings.

Fletcher testified that permanency plans were submitted to and ratified by the Juvenile Court, and that Mother had participated in the development of the plans and that Mother had signed them. Mother agreed to the various goals and responsibilities set forth in the plans. Among other

---

[1] Although K.M.C. and R.S.C. were both one year old when the petition was filed, they were born ten months apart from each other.

things, the plans required Mother to submit to an alcohol and drug assessment and follow any recommendations. Mother also agreed to submit to random drug testing. Prior to the filing of the petition to terminate Mother's parental rights, Mother submitted to twenty-two (22) drug screens. Fletcher testified that Mother tested positive on five (5) of the drug tests. More specifically, in February of 2005, Mother tested positive for cocaine; in March of 2005, Mother tested positive for cocaine and opiates; in April of 2005, Mother tested positive for cocaine and opiates; in May of 2005, Mother tested positive for amphetamines, methamphetamines, and cocaine; and on August 18, 2005, Mother, who was pregnant with her fourth child at that time, again tested positive for illegal drugs.[2] With the most recent positive drug test, Mother was held in contempt of court and incarcerated.

Fletcher testified that the permanency plans also required Mother to have stable housing sufficient to accommodate the children. Fletcher added that to her knowledge, Mother currently was living with her mother in Rogersville. Prior to that, Mother reported living in several different places, including living with a friend and with the children's paternal grandfather. The plans also required Mother to be able to support herself and the children financially. Fletcher stated that Mother has never shown the ability to support herself or the children.

Fletcher stated that, in her opinion, it would be in the children's best interests for Mother's parental rights to be terminated. The children are currently in foster care and the foster families are desirous of adopting the children.

The next witness was Myra Ramey Hale ("Hale"), a child protective services investigator with DCS. Hale testified that the youngest child was removed initially from Mother's care by DCS, then about a month later the other two children were removed by the Juvenile Court. The youngest child was removed from Mother's care due to "medical maltreatment" and because the child tested positive for THC. Hale stated:

> The child was hospitalized at Holston Valley Hospital with RSV, and the CHAD nurse had asked the family to take the child to the doctor prior to that hospitalization. They did not, and the child almost died.

Hale testified that DCS provided assistance through CHAD, "which is a nurse that goes to the home from the Health Department." Mother also was provided assistance through family support services.

DCS's next witness was Jean Davis ("Davis"), a health and development LPN. Davis received a referral regarding Mother's youngest child in December of 2004. According to Davis, it was a referral from DCS that there was "possible drug use in the home and that we were to do home visits." Davis made a total of four visits before Mother requested another nurse. Davis testified that during one of the home visits, she instructed Mother to take the child to the doctor

---

[2] Mother's parental rights to her fourth child are not at issue in this case.

because the child was having respiratory problems. Davis stated that to her knowledge, Mother never took the child to the doctor. Davis added that the child was blue around the mouth which indicated a lack of oxygen and which certainly could be life-threatening. Davis stated that either Mother or the children's father requested another nurse because during one of the home visits Davis accused Mother of slurring her speech.[3] Davis said Mother did have slurred speech, and although Davis did not know exactly why Mother's speech was slurred, she "suspected" she knew the cause.

The next witness was Angie Bellamy ("Bellamy"), who performs prevention and in-home services for Family Support Services. Bellamy first was assigned to Mother's case after the youngest child had been removed from Mother's home. According to Bellamy:

> We started out … [with] typical case management, going and checking in on them. I did do a Family Support Service referral to in-home services through Family Ties, and I had Carrie Nelms working with them at IHBI level, … [which is] the most intensive that we can do.…
>
> At the beginning, [Mother and the father] were cooperative, but once Carrie started working [with the parents], there was a lot of visits where the family – the parents were not there.…

Bellamy's services ended when all of the children were removed from Mother's custody.

The final witness was Mother, who testified that she was currently unemployed. Mother's most recent job was working at a BP station and lasted only three weeks. Mother was terminated from that job when she was incarcerated in August of 2005 after failing a drug test. Mother has not been employed since that time. When asked where she had worked prior to her job at the BP station, Mother responded "Nowhere." Mother testified that she did not pay any child support from her paychecks for the three weeks she worked at the BP station. Mother had her fourth child in November of 2005 and by the time of trial, she had not been released by her physician to seek employment.

Mother testified that she began receiving alcohol and drug counseling at Frontier Health in November of 2005, which was after the filing of the petition to terminated her parental rights. Mother received one-on-one counseling on one occasion, and she has attended three group sessions.

Mother currently is living with her mother. Mother does not have a vehicle and relies on her grandmother for transportation. Mother testified that she wanted the Juvenile Court to deny

---

[3] The parental rights of the children's father also were terminated in these proceedings. The father did not appeal the termination of his parental rights.

DCS's petition to terminate her parental rights, and that it was in the children's best interests for Mother's parental rights to remain intact.

A portion of Mother's cross-examination is as follows:

Q.     Do you recall the day you came to Court and were held in contempt?

A.     Yes, Ma'am.

Q.     Do you recall that you drug screened positive?

A.     Yes.

Q.     Okay. You understand that you've been offered lots of A&D counseling during the past year. Is that correct?

A.     Yes.

Q.     You wouldn't dispute that, would you?

A.     No.

Q.     And you wouldn't dispute that you were served [with the petition to terminate your parental rights] in October?

A.     No.

Q.     And you didn't start going to Frontier until November?

A.     Yes.

* * *

Q.     You don't dispute that you understood that you should have been paying some child support?

A.     No.

Q.     And you did work?

A.     Yes.

Q.     And you don't dispute you didn't pay any child support?

A.     No.

Q.     And you don't dispute that you had some drug and alcohol problems?

A.     No, Ma'am.

Q.     And you don't dispute that those drug and alcohol problems continued at least until August?

A.     No.

Q.     And that was also during your pregnancy with this last child?

A.     Yes.

Following the trial, the Juvenile Court entered a very thorough Final Order terminating Mother's parental rights to all three children. In the Final Order, the Juvenile Court stated, *inter alia*, as follows:

> On January 14, 2005, the children were removed from the custody of the mother because the infant, R.S.C. had not received medical attention and had to be air lifted to the hospital. The mother … waived the three day hearing at which time the Court ordered that R.S.C. would remain in the custody of the Department and K.M.C. and L.A.L.R. would return home … with intensive in-home services.… The Court ordered random drug screens, family support services in the home and parenting classes. On March 3, 2005, [Mother, through her attorney] … stipulated to the children being dependent and neglected when the mother failed a drug screen, admitted to drug use, and when the services that had been placed in the home advised the Court that there had been no compliance with services. On March 3, 2005, the Court sua sponte brought K.M.C. and L.A.L.R. back into the custody of the Department.…
>
> In this cause, the Court concludes that there is clear and convincing evidence to support grounds for termination of [Mother's] parental rights to her children under Tenn. Code Ann. § 36-1-113(g)(1) as defined by 36-1-102(1)(A)(i), § 36-1-113(g)(2) and § 36-1-113(g)(3)(A)(i) and (ii) and (iii).…

-6-

To establish [abandonment], the Department must show that the failure to pay support was willful behavior. Further, only that period of time four (4) months prior to the filing of the petition may be considered as grounds to terminate parental rights. The Court finds by clear and convincing evidence that [Mother] has abandoned the children within the meaning of the law.

The Court finds that the relevant four month period in this cause is between June 2005 through September, 2005. The Court finds by clear and convincing evidence that [Mother] abandoned the children pursuant to Tenn. Code Ann. 36-1-102(1)(A)(i) … for failure to pay child support for a period of four (4) consecutive months prior to the filing of this action. The Court finds that at the August 18, 2005 hearing, [Mother] was ordered to pay child support in the amount of fifty dollars ($50.00) per month. [Mother] was present at the hearing and was represented by counsel and … [Mother knew she was] obligated to pay child support. Case Manager Rebecca Fletcher testified that the mother was working at a BP convenience store in August, 2005 and could have paid child support, but failed to do so. Case Manager Rebecca Fletcher testified that she had held seven (7) Child and Family Team Meetings and the mother attended these meetings and child support was discussed at these meeting[s]. Nonetheless, the mother did not pay child support. The mother did not dispute that she was ordered to pay child support and she did not dispute that she failed to pay. She admitted that she was employed for a period of time in August, 2005. The Court finds that she could have paid child support and that she willfully failed to do so.…

Pursuant to Tenn. Code Ann. § 36-1-113(g)(2), the Court may terminate parental rights where the parent has failed to comply with the statement of responsibilities of the permanency plan. The Court finds by clear and convincing evidence that [Mother] failed to substantially comply with the statement [of] responsibilities of the permanency plan pursuant to Tenn. Code Ann. § 36-1-113(g)(2). Case Manager Rebecca Fletcher testified that the permanency plan required [Mother] to submit to A&D assessments and follow recommendations and submit to random drug screens. [Mother] did take drug assessments, but the Court finds that mother did not follow recommendations until September, 2005, when she had her first appointment with Frontier Mental Health. The permanency plans for the children were signed [by Mother] on March 9, 2005. [Mother] did nothing to address her drug problem for six (6) months. The Court finds that the mother submitted to twenty-two (22) random

drug screens and tested negative on seventeen (17) of those screens. She tested positive on May 6, 2005, for amphetamines, methamphetamines and cocaine; on April 1, 2005, she tested positive for opiates and cocaine; on March 3, 2005, she tested positive for opiates and cocaine. The Court finds that on August 18, 2005, she was in this Court and the Court ordered a drug screen at that time, and she tested positive for methamphetamines, amphetamines, and THC. She was also pregnant and had not sought prenatal care.… The permanency plan also provided that [Mother] would not participate in any illegal activities. [Mother] was jailed for contempt of this Court on August 18, 2005, for testing positive for drugs. The Court finds that the Department used reasonable efforts to prevent removal. CPS Investigator Myra Ramey Hale testified that she placed CHAD and Family Support Services in the home initially because the newborn tested positive at birth for THC. When all of the children came into custody, Foothills provided services of therapeutic visitation until the Court suspended the visits due to [Mother's] continued drug use, and Family Ties supervised visits for [Mother] for a period of time.

The permanency plan required [Mother to] provide stable housing for the children. Case Manager Rebecca Fletcher testified that [Mother] was presently living with her mother. She has been there since July, 2005. Prior to that [Mother] reported that she was living with friends and also living with the [children's] father and his father.

The permanency plan also required [Mother] to be able to financially support [herself] and the children. The Court finds that [Mother] worked some of the time. [Mother did not provide] the Department with sufficient information to determine that [she] could provide for the children.… Accordingly, the Court terminates [Mother's] parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(2).…

The Court finds by clear and convincing evidence that the children have been removed from [Mother] for a period of six (6) months and the conditions that led to the removal still persist; that there is little likelihood that these conditions will be remedied at an early date so that the children can be safely returned to the parent in the near future and continuation of the parent and child relation greatly diminishes the [children's] chances of early integration into a safe, stable and permanent home, pursuant to Tenn. Code Ann.

§ 36-1-113(g)(3)(A)(i) and (ii) and (iii).  CHAD nurse, Jean Davis, testified that she had little cooperation from [Mother].  At the time she made her initial contact the parents and children were living together in a trailer in Hawkins County.  She testified that she made only three (3) visits at which time [Mother] called the Health Department and requested another worker because they were not getting along.  Specifically, Nurse Davis testified that in December, 2005 or January, 2006 the infant had respiratory problems and she advised the mother to take the child to the doctor.  It does not appear that the mother followed the advise of the nurse and subsequently the child had to be hospitalized.  This incident appears to the Court to be the cause of the mother calling the Health Department to request another nurse.  Nurse Davis noted that the mother's words were slurred.  Nurse Davis testified that the mother's speech was slurred and that her reaction was slow.  Angie Bellamy with Family Support Services … testified that initially [Mother] was cooperative, but when intensive services were placed in the home they would not be at home and the children would be found at an aunt's home.  [Mother] would not work with service providers.…

The Court finds that the mother did not answer truthfully [about her drug problem when undergoing an A&D assessment.] … [Mother was later directed] to seek assistance with Great Starts in Knoxville for her drug and alcohol problems.  The mother testified that she made a phone call to Great Starts, but that she was advised to call back after the holiday.…  She did not pursue this service again.  The Court finds that the mother was offered a number of services and each time she either did not follow through or did not cooperate.  Therefore, the Court finds clear and convincing evidence to support termination of [Mother's] parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(3)(A).

After determining that three separate grounds to terminate Mother's parental rights had been proven by clear and convincing evidence, the Juvenile Court then considered whether terminating Mother's parental rights was in the children's best interests.  After reviewing the facts as set forth above, the Juvenile Court ultimately determined that terminating Mother's parental rights was in the children's best interests.

Mother appeals, claiming the Juvenile Court erred when it determined that clear and convincing evidence had been established sufficient to terminate Mother's parental rights under any of the three grounds as found by the Juvenile Court.  Mother also claims the evidence was insufficient to support the Juvenile Court's conclusion that there was clear and convincing evidence that termination of Mother's parental rights was in the children's best interests.

**Discussion**

Our Supreme Court recently reiterated the standard of review for cases involving termination of parental rights. According to the Supreme Court:

> This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

*In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006).

The relevant statutory sections addressing the three grounds upon which the Juvenile Court terminated Mother's parental rights are Tenn. Code Ann. §§ 36-1-113(g)(1) through (g)(3)(2005). These sections provide that the following are grounds for terminating parental rights:

> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;
>
> (2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;
>
> (3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>
>> (i) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

> (ii)  There is little likelihood that these conditions will
> be remedied at an early date so that the child can be safely
> returned to the parent(s) or guardian(s) in the near future; and
>
> (iii)  The continuation of the parent or guardian and
> child relationship greatly diminishes the child's chances of
> early integration into a safe, stable and permanent home.

Tenn. Code Ann. §§ 36-1-113(g)(1) through (g)(3).

In addition to the foregoing, Tenn. Code Ann. § 36-1-102(1)(A)(i)(2005) defines abandonment as follows:

> (i)  For a period of four (4) consecutive months immediately
> preceding the filing of a proceeding or pleading to terminate the
> parental rights of the parent(s) or guardian(s) of the child who is the
> subject of the petition for termination of parental rights or adoption,
> that the parent(s) or guardian(s) either have willfully failed to visit or
> have willfully failed to support or have willfully failed to make
> reasonable payments toward the support of the child….

The first issue is whether there was clear and convincing evidence that Mother had abandoned the children by willfully failing to support them for the four month period immediately preceding the filing of the petition.  During the relevant four month period, Mother certainly was capable of being employed and in fact was so employed for several weeks, until she was incarcerated due to her own actions.  Mother never paid any child support during the relevant four month period, although she was able to purchase and use illegal drugs.  We conclude that the Juvenile Court correctly determined that, pursuant to Tenn. Code Ann. § 36-1-113(g)(1), there was clear and convincing evidence that Mother had abandoned the children by willfully failing to support them for the four month period immediately preceding the filing of the petition.

The next issue is whether there was clear and convincing evidence to terminate Mother's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(2) due to Mother's alleged substantial noncompliance with the statement of responsibilities contained in the permanency plans. The plans required, among other things, that Mother have an A&D assessment, that she follow any recommendations, and that she remain drug free.  Notwithstanding this requirement, Mother failed five drug tests, some of which she failed while pregnant with her fourth child.  The plans also required Mother to obtain housing suitable for raising the children and that she become financially capable of supporting the children.  Mother came nowhere close to accomplishing either of these plan requirements. We conclude that there was clear and convincing evidence to terminate Mother's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(2) based on Mother's substantial noncompliance with the statement of responsibilities contained in the permanency plans.

The third issue is whether there was clear and convincing evidence to terminate Mother's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(3). At the time of trial, it was undisputed that all three children had been removed from Mother's home for at least six months by order of the Juvenile Court. The conditions which led to the children's removal from Mother's care still persisted, these conditions included Mother's continued illegal drug use and her inability to secure employment and proper housing. There is little, if any, doubt that the children would continue to be neglected if they were returned to Mother's care. While Mother did make a last minute effort to improve her situation, for the vast majority of the time after the children were removed, Mother did very little toward making a reasonable effort to regain custody of the children. The facts demonstrate no likelihood that Mother would remedy the conditions leading to the children's removal at any time in the near future. As such, continuation of the parent-child relationship would only serve to diminish the children's chances of early integration into a safe and stable home. We conclude that there was clear and convincing evidence to terminate Mother's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(3)(A)(i) through (iii).

Having concluded that there was clear and convincing evidence supporting all three grounds for terminating Mother's parental rights, the final issue is whether the evidence is clear and convincing that termination of Mother's parental rights was in the children's best interest. Along this line, Tenn. Code Ann. § 36-1-113(i)(2005) provides as follows:

> (i) In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
>
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
>
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
>
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i).

It is clear that Mother has consistently used illegal drugs and has not made an adjustment of circumstances or conditions such that it would be safe for the children to be returned to her care. DCS certainly made a reasonable effort to assist Mother, but Mother failed to make any lasting adjustment. After reviewing the statutory factors which are applicable to this case, as well as the Juvenile Court's detailed findings with respect to those factors, we conclude that clear and convincing evidence was submitted to the Juvenile Court that it was in the children's best interests for Mother's parental rights to be terminated.

### Conclusion

The judgment of the Juvenile Court is affirmed, and this cause is remanded to the Juvenile Court for collection of the costs below. Exercising our discretion and as Mother is indigent, the costs on appeal are assessed against the Appellee, the State of Tennessee, Department of Children's Services.

_____
D. MICHAEL SWINEY, JUDGE