**In re F.R.R., III.**

Supreme Court of Tennessee,
at Nashville.

Oct. 6, 2005 Session.

May 8, 2006.

Gary W. Wicks, Sr., Franklin, Tennessee, for the appellant, Floyd Ray Rogers.

Deana C. Hood, Franklin, Tennessee, for the appellees, Mitzi A. Gomes and Gary F. Gomes.

Robert H. Plummer, Jr., Franklin, Tennessee, Guardian Ad Litem.

## OPINION

JANICE M. HOLDER, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and CORNELIA A. CLARK, JJ., joined.

In this direct appeal from the termination of his parental rights, Father seeks to reverse the juvenile court's finding that he abandoned his child. After carefully reviewing the record and relevant legal authority, we affirm the juvenile court's finding of abandonment and the judgment terminating Father's parental rights.

## I. Factual and Procedural History

The child, F.R.R.,[1] was born on May 21, 1999, in Mason Hall, Obion County, Tennessee. The parents, who were not married, had dated for more than one year while living in Mason Hall with their respective parents. Their relationship ended, according to F.R.R.'s father, Floyd Ray Rogers ("Father"), on July 4, 1999. At first, Father saw F.R.R. daily, but the visits dwindled to several times a week during the first few months of the child's life.

The mother, Mitzi A. Gomes ("Mother"), met Gary F. Gomes ("Gomes"), F.R.R.'s present stepfather, when F.R.R. was two weeks old. As the relationship between Mother and Gomes progressed, Father's visits with F.R.R. decreased. Mother married Gomes and moved to Chapel Hill, Tennessee, on December 31, 1999.

On February 2, 2000, when F.R.R. was eight months old, paternity was legally established, and the Obion County Juvenile Court ordered Father to pay child support. In May of 2000, notice stating that the child support case was being transferred to Marshall County was sent to Father informing him of Mother's relocation to Chapel Hill. After child support enforcement proceedings were initiated on August 31, 2001, Father filed a petition in the Marshall County Juvenile Court to set visitation with F.R.R. On October 31, 2001, the juvenile court entered an order awarding Father four visits to take place at Opry Mills Mall, located in Davidson County, in November and December of 2001. Father participated in three of the visits. Mother testified that she heard nothing from Father after January of 2002. Father continued to pay child support as he was able, and he had a telephone conversation with F.R.R. on the child's fourth birthday, May 21, 2003. There has been no further contact between Father and F.R.R. Father admits that he was never denied visitation nor has he ever been told that he could not telephone F.R.R.

In 2003, Mother, Gomes, and F.R.R. moved to Spring Hill, Tennessee. On May 7, 2004, Mother and Gomes filed a petition in the Williamson County Juvenile Court seeking termination of Father's parental rights and adoption by Gomes. The grounds for termination were abandonment by willfully failing to visit or pay more than a token amount of child support in the four months preceding the filing of the petition.

The juvenile court found that Mother and Gomes failed to establish by clear and convincing evidence that Father willfully failed to support F.R.R. Accordingly, the juvenile court rejected failure to pay child support as a ground for abandonment.

---

1. This Court has a policy of protecting the anonymity of children in parental termination cases by referring to them by initials.

The juvenile court found, however, that Father had not seen F.R.R. in two and one-half years and that no one had prevented visitation. Based on this failure to visit, the juvenile court found that Father had abandoned F.R.R. The juvenile court also found that termination was in the best interest of the child. Therefore, the juvenile court entered an order terminating Father's parental rights on August 16, 2004.

The Court of Appeals affirmed the juvenile court's order terminating Father's parental rights. In so doing, the Court of Appeals addressed the applicability of Tennessee Code Annotated section 36–1–108, the parental relocation statute, an issue that was not raised in the juvenile court.

## II. Standard of Review

This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R.App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine,* 79 S.W.3d 539, 546 (Tenn.2002) (citing Tenn. Code Ann. § 36–1–113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

## III. Analysis

Tennessee Code Annotated section 36–1–113(g)(1) (Supp.2003) designates "abandonment" as a ground for the termination of parental rights. In this context,

abandonment is defined in section 36–1–102(1)(A)(I) (Supp.2003) as follows:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child[.]

Concerning "abandonment" we have stated, "Certainly, a parent who has abandoned his child, either by willfully failing to visit or by willfully failing to support, is unfit." *In re Swanson,* 2 S.W.3d 180, 188 (Tenn.1999). Nonetheless, the abandonment must be willful, and where a parent has been thwarted in visitation efforts, we have refused to find willful abandonment. *See, e.g., In re D.A.H.,* 142 S.W.3d 267, 277 (Tenn.2004).

It is undisputed that Father failed to visit F.R.R. during the four months immediately preceding the filing of the complaint to terminate his parental rights. *See* Tenn.Code Ann. § 36–1–102(1)(A)(I); *In re D.L.B.,* 118 S.W.3d 360, 366 (Tenn. 2003). The evidence supports a finding that Father's failure to visit was willful. Father testified that Mother never denied him visitation and that his reason for failing to pursue visitation with his child was that he did not want to be "a trouble maker" or "disrupt their lives." The record shows that during the four months preceding the petition to terminate his parental rights, Father made no effort to contact Mother regarding visitation with F.R.R. In addition, the record contains no assertion that Mother or Gomes prevented him from visiting F.R.R. Accordingly, we conclude that the evidence supports the

conclusion reached by the juvenile court and intermediate appellate court that abandonment for failure to visit has been established.

 Furthermore, we conclude that the evidence does not preponderate against the juvenile court's conclusion that termination of Father's parental rights is in the best interest of the child. Factors to be considered in determining whether termination of parental rights is in the best interest of the child are found in Tennessee Code Annotated section 36–1–113(I) (Supp.2003). Except for a single telephone call on F.R.R.'s fourth birthday, the juvenile court noted that Father failed to visit or contact F.R.R. from the age of two and one-half years until the age of almost five, when the complaint to terminate parental rights was filed. *See* Tenn.Code Ann. § 36–1–113(i)(3) ("Whether the parent … has maintained regular visitation or other contact with the child"). The juvenile court also concluded that F.R.R. failed to develop a meaningful relationship with Father. *See id.* at (4) ("Whether a meaningful relationship has otherwise been established between the parent … and the child"). Moreover, the juvenile court found that it would not be in the child's best interest to "to go back now and try and establish some sort of relationship [with Father]." *See id.* at (5) ("The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition").

Father contends that even if the evidence proves abandonment, the abandonment is cured by Mother's failure to give notice of her intended relocation to Chapel Hill pursuant to Tennessee Code Annotated section 36–6–108. Because this issue was not raised in the juvenile court, we will not address it here. *See City of Cookeville ex rel. Cookeville Regional* *Med. Ctr. v. Humphrey,* 126 S.W.3d 897, 905–06 (Tenn.2004) (noting the general rule that " 'questions not raised in the trial court will not be entertained on appeal' ") (quoting *Lawrence v. Stanford,* 655 S.W.2d 927, 929 (Tenn.1983)). Accordingly, the Court of Appeals erred in addressing the applicability of Tennessee Code Annotated section 36–1–108.

## IV. Conclusion

We affirm the judgment of the Court of Appeals upholding the termination of Father's parental rights to his child, F.R.R., and remand the case to the juvenile court for further proceedings consistent with this opinion. The costs of this appeal are taxed to the appellant, Floyd Ray Rogers, and his surety, for which execution may issue if necessary.