# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 8, 2010 Session

### IN RE: TRISTYN K.

**Appeal from the Chancery Court for Anderson County**
**No. 09CH0427      William E. Lantrip, Chancellor**

---

**No. E2010-00109-COA-R3-PT - FILED JULY 22, 2010**

---

This parental rights termination case was filed by Christopher W. ("Father") and Sara R. ("Stepmother") seeking to terminate the parental rights of Linsie K. ("Mother") to her daughter Tristyn K. ("the Child"). Stepmother also seeks to adopt the Child, who currently is four years old. Following a trial, the Trial Court terminated Mother's parental rights after finding various grounds had been proven by clear and convincing evidence and that termination of Mother's parental rights was in the Child's best interest. For the reasons discussed in this Opinion, we vacate the Trial Court's judgment finding grounds to terminate Mother's parental rights, and we remand this case for further proceedings consistent with this Opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., joined. CHARLES D. SUSANO, JR., J., filed a separate opinion concurring in part and dissenting in part.

Keith Lowe, Knoxville, Tennessee, for the Appellant, Linsie K.

Joseph F. Della-Rodolfa, Knoxville, Tennessee, for the Appellees, Christopher W. and Sara R.

# OPINION

## Background

This parental rights termination case was filed by Father, the Child's biological father, and Stepmother seeking to terminate Mother's parental rights so that Stepmother could adopt the Child. According to the petition, the Child was born on October 21, 2005, and Father and Stepmother have had joint legal and physical custody of the Child since December 5, 2008. As grounds for terminating Mother's parental rights, Father alleged:

> (a) [Mother] has abandoned the child by willfully failing to visit or has engaged in only token visitation with the minor child for the four (4) consecutive months immediately preceding the filing of the Petition pursuant to T.C.A. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(i). Further, [Mother] was incarcerated for a time prior to the filing of this Petition and willfully failed to visit or engaged in only token visitation for the four (4) consecutive months immediately preceding her incarceration pursuant to T.C.A. §§ 36-1-113(g)(1) and 36-1-102(i)(A)(iv).
>
> (b) [Mother] has abandoned the child by failing to support or make reasonable payments toward the support of the child for the four (4) consecutive months immediately preceding the filing of this Petition pursuant to T.C.A. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(I). Further, [Mother] was incarcerated for a time prior to the filing of this Petition and willfully failed to support or make reasonable payments toward the support of the child for the four (4) consecutive months immediately preceding her incarceration pursuant to T.C.A. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(iv).[1]
>
> (c) [Mother] is incarcerated at the filing of this Petition; in the event she is released prior to the filing of this Petition, [Mother] was incarcerated during part of the four (4) months immediately preceding the filing of this Petition, and [Mother] has engaged in conduct prior to incarceration which exhibits a wanton

---

[1] The Trial Court ultimately found there was insufficient evidence to conclude that Mother had abandoned the Child either by failing to visit or by failing to pay support. These findings are not at issue on appeal.

disregard for the welfare of the child pursuant to T.C.A. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(iv).[2]

(d) That upon the child's initial removal from [Mother's] custody, the Department of Children's Services was briefly granted custody of the child. The Department generated and had approved by the Knox County Juvenile Court a Permanency Plan explicitly laying out [Mother's] responsibilities for return of the child to her custody. Further, [Mother] has done nothing on the plan such that she is in noncompliance with the statement of responsibilities in the plan pursuant to T.C.A. §§ 36-1-113(g)(2) and 37-2-403(a)(2)(C).

(e) That [Mother] has committed severe abuse of the child and the child's [half-sibling] as defined at T.C.A. § 37-1-102(21)(A) while the children were in [Mother's] home pursuant to T.C.A. § 36-1-113(g)(4).

In addition to alleging that grounds existed to terminate Mother's parental rights, Father alleged that it was in the Child's best interest for Mother's parental rights to be terminated. Father asserted that he and Stepmother have provided and will continue to provide a safe and suitable environment for the Child.

The trial took place on December 9 & 10, 2009. For background purposes only, we will summarize some of Father's testimony and that of the DCS representative called at trial. Father testified that he was 27 years old and has been married to Stepmother for over 3 years. Father has one other child, a five year old daughter named Antika. Father has co-parenting time with Antika every weekend. He is current on his child support payments for Antika.

Father testified that prior to the Child being removed from Mother's home, Mother had told him that he was the biological father of the Child. Father later attempted to contact Mother so he could begin to establish a relationship with the Child, but Mother ignored his calls. Father eventually "googled" Mother's name in hopes of finding her address, and this is when he learned that she had been arrested for child abuse. Father then contacted DCS, told DCS that he might be the biological father of the Child, and requested a paternity test. The DNA test established that Father was the Child's biological father.

_____

[2] The ground alleging wanton disregard for the welfare of the Child as a basis for terminating Mother's parental rights was nonsuited the morning of the trial.

Father testified that in December of 2008, he and Stepmother were awarded full custody of the Child and Mother was granted supervised visitation. Father testified that Mother's visitation with the Child has been minimal. The order allowing Mother supervised visitation provides that under no circumstances is the Child allowed to be around Lee Stiles ("Stiles"), who is the father of the Child's younger half-brother. Father testified at trial that Mother continues to live with Stiles. According to Father, as of June 30, 2009, Mother was in arrears on child support payments in the amount of $5,003.

Father testified that he has a great relationship with Stepmother and that they are employed at the Department of Energy in Oak Ridge. They each earn approximately $42,000 per year. The Child has a good relationship with Stepmother as well as her half-sister, Antika.

Father testified that he believes that Mother endangered the Child's life and that she has not rehabilitated herself. The Child had some emotional issues when Father first obtained custody, but they have worked through those and the Child currently is doing excellent in school and otherwise is doing "great."

Ms. Kelly Sanders ("Sanders") was the only DCS representative to testify at trial. Sanders testified that on the day the Child and her half-brother were removed from Mother's home, she received a call about an emergency situation at Mother's apartment. When Sanders arrived at Mother's apartment, law enforcement personnel were already on the scene. The Child and her one-year old half-brother were found in a room with a tile floor, two over-stuffed stuffed animals, and two thin blankets. There was no other furniture in the room. The room was cold and there was a broken wall heater with exposed wiring showing. There also was a "sippy-cup" with curdled milk in it. The Child had severe diaper rash. The door to the room where the children were found had been tied shut. After the children were removed, Mother was drug tested and tested positive for THC, benzodiazepines, and cocaine. Stiles tested positive for THC. When asked about the permanency plan entered into between Mother and DCS, Sanders stated that she was not involved in that process and the foster care worker would be able to testify about the permanency plan's requirements. The foster care worker did not testify.

Following the trial, the Trial Court announced its decision from the bench. The Trial Court first determined that insufficient evidence had been presented to terminate Mother's parental rights based on abandonment for failing to visit or failing to pay support. The Trial Court then stated:

> The Court does find that there was severe negligence and abuse as defined by the statute, and specifically, that the

conditions under which this child and both children were being kept, there was a substantial likelihood of harm. We've had both the officer and the testimony of the DCS representative concerning the conditions that they found. It was just essentially a barren room where the children were kept in a manner that the Court finds that there was a substantial risk of harm to these children and that their physical conditions and the conditions described were such that the Court finds that this definition and that basis exists by clear and convincing evidence to find a basis for termination. In addition, the Court finds that there is a persistence of conditions that existed at the time of the removal of these children that essentially remains that resulted in extraordinary restrictions on any contact that [Mother] had with this child; that the visitation allowed was limited and restricted. . . .

There is a failure to complete the permanency plan that was established by the Knox County Juvenile Court after the expiration of the standard period of time, and I believe that the provisions that have not been completed do constitute the meaningful treatment and care that would have justified an expansion of contact and visitation.

So there is a finding by clear and convincing evidence that there is a persistence of the conditions, and further, that [Mother's parental rights to two of her other] children have been voluntarily surrendered. The testimony by [Mother] that the reason for doing this was her acknowledgment that she was incapable of providing the necessary care for these children, convinced me that there exists clear and convincing evidence that termination is in the best interest of this child; that she is presently with her natural father and his wife in a home, bonded with this family, that they are able and capable of providing an appropriate home for this child. . . .

The Trial Court then entered a Final Judgment which incorporated its opinion announced following the trial.

Mother appeals raising two issues. First, Mother claims the Trial Court erred when it found that she had committed severe child abuse. Second, Mother claims the Trial

Court erred when it found that termination of her parental rights was in the Child's best interest.

## Discussion

Our Supreme Court reiterated the standard of review for cases involving termination of parental rights in *In re F.R.R., III*, 193 S.W.3d 528 (Tenn. 2006). According to the Supreme Court:

> This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

*Id.* at 530.

We first address whether grounds to terminate Mother's parental rights had been proven. Excluding the ground that was nonsuited and the abandonment grounds that the Trial Court concluded had not been proven, there were only two remaining grounds alleged in the Complaint on which to terminate Mother's parental rights: (1) substantial noncompliance with the requirements of a permanency plan (*see* Tenn. Code Ann. § 36-1-113(g)(2)); and/or (2) Mother committing severe child abuse as defined in Tenn. Code Ann. § 37-1-102 (*see* Tenn. Code Ann. § 36-1-113(g)(4)). We will address each of these grounds.

With respect to the ground surrounding Mother's noncompliance with the requirements in her permanency plan, counsel for Mother stated at oral argument before this Court that he did not interpret the Trial Court's judgment as actually finding substantial noncompliance with a permanency plan as one of the grounds upon which to terminate Mother's parental rights. It is for this reason that Mother's brief does not specifically address this ground. In our opinion, the language of the Trial Court's judgment is such that the Trial

Court did find that Mother failed to substantially comply with her permanency plan. Accordingly, we will address this issue.

The only DCS representative to testify at trial was Sanders, who admitted that she did not prepare Mother's permanency plan and was not able to testify about its contents. The permanency plan was not admitted as an exhibit at trial. Although Mother was questioned about whether she completed counseling and things of that nature, we cannot ascertain with any certainty if anything Mother allegedly failed to do actually was a requirement of the permanency plan because we do not have the permanency plan in the record. Without the permanency plan, we cannot determine exactly what Mother was required to do under the permanency plan, which in turn prevents us from determining whether she substantially complied with its requirements.

Based on the foregoing, we vacate the Trial Court's finding that Mother failed to substantially comply with the requirements contained in her permanency plan. On remand, should Father want to pursue substantial noncompliance as a ground to terminate Mother's parental rights, a new hearing must be conducted on this ground and the record must contain sufficient information in the event of a further appeal. At a minimum, this would include the actual permanency plan(s). In the absence of an admission by Mother that she failed to substantially comply, the testimony by an appropriate DCS representative as to exactly which requirements were not met likely will be necessary.

The next issue is whether the Trial Court properly terminated Mother's parental rights due to her committing severe child abuse. Tenn. Code Ann. § 36-1-113(g)(4) provides that parental rights can be terminated if that parent is found to have committed severe child abuse as defined in Tenn. Code Ann. § 37-1-102. As pertinent to this appeal, "severe child abuse" is defined in Tenn. Code Ann. § 37-1-102(23) as follows:

> (23) "Severe child abuse" means:
>
> (A) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause great bodily harm or death and the knowing use of force on a child that is likely to cause great bodily harm or death . . . .

In its memorandum opinion following trial, the Trial Court stated that Mother was guilty of:

> severe negligence and abuse as defined by the statute, and specifically, that the conditions under which this child and both

children were being kept, there was a substantial likelihood of harm. . . . [T]he Court finds that there was a substantial risk of harm to these children . . . .

At oral argument, counsel for Father conceded that the standard used by the Trial Court in its memorandum opinion is different from that required by the statute in order to terminate parental rights for committing severe child abuse as defined in Tenn. Code Ann. § 37-1-102. The Trial Court's findings on this ground used the term "substantial likelihood of harm . . ." as opposed to any finding of abuse "likely to cause great bodily harm or death. . . ." A finding of "substantial likelihood of harm . . ." is not equivalent to the finding of abuse "likely to cause great bodily harm or death. . . ." Accordingly, we vacate the Trial Court's judgment in this regard and remand this case to the Trial Court for a determination of whether there was clear and convincing evidence to terminate Mother's parental rights for committing severe child abuse pursuant to Tenn. Code Ann. § 36-1-113(g)(4) and as defined in Tenn. Code Ann. § 37-1-102.

The final issue concerns the Trial Court's statement that "the Court finds that there is a persistence of conditions that existed at the time of the removal of these children that essentially remains . . . ." One of the grounds for terminating parental rights is based on what is commonly referred to as "persistent conditions" described in Tenn. Code Ann. § 36-1-113(g)(3), which provides as follows:

> (g)(3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>
> > (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
> >
> > (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
> >
> > (C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home;

Father's complaint did not allege the presence of "persistent conditions" as one of the grounds to terminate Mother's parental rights. A trial court cannot terminate parental rights based on a ground that is not alleged in the complaint. *See M.D. v. R.L.H.*, No. E2005-00324-COA-R3-PT, 2005 WL 3115874, at \*3 (Tenn. Ct. App. Nov. 22, 2005)("The record contains nothing showing that the petition ever was amended to allege any additional ground upon which to terminate Father's parental rights. Absent evidence showing that Father was properly apprised that these additional grounds for terminating his parental rights were at issue, we must vacate the Juvenile Court's judgment insofar as it terminates Father's parental rights pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1) and (g)(4)"). *Accord*, *In re: W.B. IV*, No. M2004-00999-COA-R3-PT, 2005 WL 1021618 (Tenn. Ct. App. Apr. 29, 2005), *no appl. perm. appeal filed*. Thus, to the extent the Trial Court's opinion can be read as finding a "persistence of conditions," we also vacate that portion of the judgment.

For the reasons discussed above, we vacate the Trial Court's judgment finding grounds upon which to terminate Mother's parental rights had been sufficiently established. The issue of whether termination of Mother's parental rights was in the Child's best interest is pretermitted. This case is remanded to the Trial Court for further proceedings consistent with this Opinion.

## Conclusion

The judgment of the Trial Court finding grounds to terminate Mother's parental rights is vacated. This case is remanded to the Anderson County Chancery Court for further proceedings consistent with this Opinion and for collection of the costs below. Costs on appeal are taxed to the Appellees, Christopher W. and Sara R., for which execution may issue, if necessary.

_____
D. MICHAEL SWINEY, JUDGE

-9-