# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs January 11, 2013

## IN RE TIASHAUN C. ET AL.

### Appeal from the Juvenile Court for Anderson County
### Nos. J28810 & J28811    Brandon Fisher, Judge

### No. E2012-01514-COA-R3-PT-FILED-FEBRUARY 22, 2013

This is a termination of parental rights case pertaining to two minor children (collectively "the Children") of the defendant, Valtrella C. ("Mother"). The Children were placed in the custody of the petitioners, Jason C. and Edana B., in November 2009. The Children had been removed from Mother by the Department of Children's Services ("DCS") because of Mother's substance abuse problems. Jason C. and Edana B. filed a petition in June 2011 seeking to terminate the parental rights of Mother. They alleged that grounds for termination existed due to abandonment based on Mother's willful failure to visit or pay more than token support. Following a bench trial, the court granted the petition after finding, by clear and convincing evidence, that Mother had willfully failed to visit the Children. The court also found, by clear and convincing evidence, that termination was in the best interest of the Children. Mother appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

L. Rosillo Mulligan, Harriman, Tennessee, for the appellant, Valtrella C.

Timothy Grant Elrod, Knoxville, Tennessee, for the appellees, Jason C. and Edana B.

**OPINION**

**I.**

The Children, who are the focus of this case, are Tiashaun C. (DOB: April 6, 2004) and Serenity C. (DOB: June 30, 2009). Petitioner Jason C. is the biological father of Tiashaun, and petitioner Edana B. is Jason C.'s wife and Tiashaun's stepmother. Petitioners have no biological relationship to Serenity, who is Tiashaun's half-sister.[1] When petitioners were given custody of the Children, they made arrangements with Mother to allow her to visit the Children. At some point, the petitioners made an agreement with Mother that she could visit the Children at Burger King every Saturday at 4:00 p.m. Edana B. took the Children to Burger King for these visits as Jason C. felt that his presence might present a problem. After Mother's attendance at the visits became sporadic, Edana B. began keeping contemporaneous notes on a calendar as to whether and when Mother attended. Edana B.'s notes showed that in June 2010, Mother only came to one of four scheduled visits. The notes showed that Mother attended none of the five scheduled visits in July, two of the four scheduled visits in August, and missed the first scheduled visit in September.

A hearing was held in the trial court on September 9, 2010, on DCS's petition seeking a finding that the Children were dependent and neglected. The petition also asked the court to place the Children in the custody of Jason C. and Edana B. At that hearing, Mother agreed that there was clear and convincing evidence that the Children were dependent and neglected due to her "ongoing issues with substance abuse and domestic violence that has occurred in Mother's home." Mother also agreed that it was in the best interest of the Children to remain in the custody of Jason C. and Edana B., and that visitation between Mother and the Children should occur at Parent Place.[2] The parties agreed that having a third party supervise visitation would also be an option so long as the guardian ad litem approved the "supervisor, the times, place, and conditions of the visit."

Mother did not visit with the Children after the date of that hearing. The petition of Jason C. And Edana B. seeking to terminate Mother's parental rights was filed on June 8, 2011. The petition alleged that Mother had abandoned the Children by failing to visit during the four months preceding the filing of the petition and by failing to pay more than token support.

---

[1]The parental rights of Serenity's biological father were terminated at the same hearing. That judgment is not before us on this appeal.

[2]Parent Place is a facility where individuals, for a fee, can exercise visitation rights with their children.

Following a bench trial, the court ruled that Jason C. and Edana B. had proven, by clear and convincing evidence, that Mother had abandoned the Children by willfully failing to visit. The court also found, by clear and convincing evidence, that termination was in the Children's best interest. Mother filed a timely appeal.[3]

## II.

Mother presents the following issues for our review:

> 1. Whether there was clear and convincing evidence to establish that Mother had willfully failed to visit the Children for four months preceding the filing of the petition to terminate parental rights.
>
> 2. Whether the appellees, one of whom is a Tennessee Department of Children's Services caseworker, failed to facilitate and/or thwarted Mother's visitation with the Children.
>
> 3. Whether the trial court erred by finding that termination was in the Children's best interest.

## III.

In a termination of parental rights case, this Court is obligated to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed de novo upon the record accompanied by a presumption of correctness unless the preponderance of the evidence is against those findings. *Id.*; Tenn. R. App. P. 13(d). Great weight is accorded the trial court's determinations of witness credibility, which shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Questions of law are reviewed de novo with no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741 (Tenn. 2002).

---

[3]Mother's original notice of appeal was timely filed, but with the wrong court, *i.e.,* the circuit court. Mother later filed an amended notice of appeal and corrected the defect.

As this Court has often stated:

> It is well established that parents have a fundamental right to the care, custody, and control of their children. While parental rights are superior to the claims of other persons and the government, they are not absolute, and they may be terminated upon appropriate statutory grounds. A parent's rights may be terminated only upon "(1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and (2) [t]hat termination of the parent's or guardian's rights is in the best interests of the child." Both of these elements must be established by clear and convincing evidence. Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.

*In re Angelica S.*, E2011-00517-COA-R3-PT, 2011 WL 4553233 (Tenn. Ct. App. E.S., filed Oct. 4, 2011)(citations omitted).

IV.

Mother first argues that the trial court erred in finding that she willfully failed to visit the Children. Mother asserts that she was unable to visit the Children at Parent Place because she could not afford the visits and did not have transportation. Mother also asserts that she tried, for months, to contact the guardian ad litem to see if her aunt could be approved as a third-party supervisor for visitation, but the guardian never returned her calls. Mother stated that she never contacted Jason C. or Edana B., because she did not have their phone number.

The trial court found that it was uncontroverted that Mother had not visited the Children for at least four months preceding the filing of the petition to terminate. The court further found that this failure was willful pursuant to Tenn. Code Ann. §§ 36-1-102 (2010)[4]

_____

[4]Tenn. Code Ann. 36-1-102 states:

(1)(A) For purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, "abandonment" means that:

(continued...)

and 36-1-113 (2010). The court found that Mother's assertions regarding her inability to pay Parent Place's fee and her lack of transportation were not credible. The court found that Mother had admitted she could get a ride from friends or family or take the bus. The court also found that, based on Mother's testimony about her income, she should have had at least $20 to $90 per month left over after she paid child support. The court noted that the visits at Parent Place cost only $20 a week. The court found that Mother clearly could have visited the Children, but chose not to. The evidence does not preponderate against the trial court's clear and convincing finding.

Mother testified that she lived with her ailing mother and cared for her, and that this prevented her from working. Mother stated that she was paid $100 to $150 per month to take care of her mother, that her mother paid all other living expenses, and that Mother received food stamps which paid for her food. Mother testified that she was 30 years old and had no physical disabilities, but had recently been diagnosed as bipolar. Mother also testified that she sometimes worked cleaning houses or babysitting, but earned, at most, about $40 in a week doing so.

Mother admitted that she called Parent Place right after the September 9, 2010, hearing and set up an intake, but never went there to set up the visits. She testified that Parent Place told her the visits would cost $20 per week, and she could not afford that. Mother admitted that she later set up another intake with Parent Place, and once again did not follow through. Mother testified that she also had transportation issues, and could not afford to pay her family or friends to take her there. Mother admitted, however, that she could have taken the bus, as there was a bus stop very close to her home.

Mother admitted that she was physically capable of working, but testified that she needed to take care of her mother. She testified that her mother had numerous health problems and was paralyzed from the waist down, but that her mother's "mind was good" and thus her mother was able to administer her own medications, had transportation which took her to get her medicine and to the doctor, and also had a nurse that came into the home part-time. Mother testified that she had looked for work, but provided no details or proof of her efforts.

---

[4](...continued)
> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child; . . ..

Mother admitted that she had income of at least $100 to $150 per month, plus the extra money she earned babysitting or housecleaning. Mother admitted that she had no expenses other than child support. The proof showed that in the months preceding the filing of the petition, the most that Mother had ever paid toward her child support obligation in any one month was a total of $80 for both Children. Mother's child support payments were proven to be as follows:

| October 2010 | $80 total paid |
| November 2010 | $50 total paid |
| December 2010 | $55 total paid |
| January 2011 | $80 total paid |
| February 2011 | 0 paid |
| March 2011 | $80 total paid |
| April 2011 | $75 total paid |
| May 2011 | $70 total paid |
| June 2011 | 0 paid |

The proof clearly supports the trial court's finding that Mother could have paid $20 to visit the Children at Parent Place, if she had chosen to do so. As the trial court found, Mother would have had $20 to $90 per month or more left from her acknowledged income after the child support amounts she paid. The proof also supports the trial court's finding that transportation was not an issue, since Mother admitted that there was a bus stop very near her home. The evidence does not preponderate against the trial court's finding, by clear and convincing evidence, that Mother abandoned the Children by willfully failing to visit for at least four months immediately preceding the filing of the petition.

V.

Mother's next issue centers around Edana B.'s involvement in the case. Mother argues that since Edana B. is a DCS employee, Mother was not treated fairly. Mother also argues that Edana B. and Jason C. thwarted her efforts to visit the Children.

The proof shows, and Mother admitted, that when petitioners first gained custody of the Children, Mother was given the option of having the case transferred out of Knox County to avoid any issue regarding a conflict of interest due to Edana B.'s employment with DCS.

Mother waived the issue initially, but then, some months later, she asked for the case to be transferred. Mother's request was granted, and the case was transferred to Anderson County and remained there through the termination hearing. Mother failed to provide any proof that she was treated unfairly. There was no showing that Edana B.'s employment with DCS impacted this case in any way.

The proof also showed, and Mother admitted, that when petitioners first got custody of the Children, they reached an agreement with Mother regarding how visitation would take place. Mother testified that there was a time when Edana B. would bring the Children to Mother's house, but that this stopped at some point, and visitations were then set for Saturdays at Burger King. There was no testimony regarding why the visits were changed to Burger King, but it was shown that this allowed one of Mother's other children, who was in his father's custody, to visit at the same time.

Edana B. testified that she took contemporaneous notes about the visits. She presented her calendars showing when Mother had shown up and when she had not. Mother's visitation was almost nonexistent. From June 2010 to September 2010, Mother only showed up for three out of fourteen scheduled visits. Edana B. testified she took the Children to Burger King on each and every Saturday, and they waited there for Mother to arrive. Edana B. provided additional proof in the form of food receipts. She testified that Tiashaun would get upset at first when Mother did not show up, and that she would buy him treats to lift his spirits. Petitioners testified that, after a while, however, Tiashaun did not seem to get as upset when Mother missed, as he "got used to it."

Edana B. testified Mother's sporadic attendance was the reason she requested at the September hearing that the visits be moved to Parent Place. Mother agreed to this modification, as the record reflects. Mother then willfully failed to follow through with her intake or otherwise take any steps to visit the Children at Parent Place.

Mother also argues that Jason C. and Edana B. should have found an agreeable third-party supervisor for the visits, as this was another option listed in the order. The proof showed that Mother never contacted them about this possibility, however, despite the fact that their phone number remained unchanged. Jason C. and Edana B. both testified that they had tried, at various times, to reach Mother by phone, but her number had been disconnected. Mother admitted that her phone number did change in late 2010 or early 2011. Mother has simply failed to show that her visitation was thwarted by the petitioners in any manner. This issue is without merit.

VI.

A.

Finally, Mother argues that petitioners failed to show, by clear and convincing evidence, that termination was in the Children's best interest. When, as here, at least one ground for termination of parental rights has been established, DCS must then prove, by clear and convincing evidence, that termination is in the children's best interest. ***White v. Moody***, 171 S.W.3d 187, 192 (Tenn. Ct. App. 1994). When a parent has been found to be unfit by establishment of a ground for termination, the interests of parent and children diverge, and the focus shifts to what is in the children's best interest. ***In re Audrey S.***, 182 S.W.3d 838, 877 (Tenn. Ct. App. 2005).

Tenn. Code Ann. § 36-1-113(i) provides a list of factors the trial court is to consider when determining if termination is in a child's best interest. This list is not exhaustive, and the statute does not require the court to find the existence of every factor. ***In re Audrey S.***, 182 S.W.3d at 878. Further, the best interest of a child must be determined from the child's perspective and not that of the parents. ***White,*** 171 S.W.3d at 194.

Tenn. Code Ann. § 36-1-113(i) lists the following factors for consideration:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
>
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
>
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

B.

In this case, the trial court considered the above factors and made the following findings, which we will paraphrase for brevity:

> Mother has not made sufficient adjustment in her circumstances to make it safe for the Children to be in her home. Her living situation is the same, and in August 2011, she had another child removed because the child was drug-exposed at birth. Mother has only very recently taken some steps to remedy her drug problem, but she took no real steps from the time these Children were removed in 2009 and the time her youngest child was born in August 2011.

> Mother has not maintained regular visitation with the Children. Edana B.'s documentation/testimony regarding Mother's lack of visitation is credible.

> There is no proof that the Children's relationship with Mother is meaningful, due to lack of contact. There have been no visits, calls, letters, gifts, etc.
>
> The Children are integrated into the home of petitioners, and there is a strong parent/child connection between the Children and petitioners. A change of caretakers would be detrimental to the Children's emotional and psychological condition. Petitioner's home is the only home that Serenity has ever known.
>
> Mother's admitted drug use shows that there was an environment of neglect. This is bolstered by the fact that she has other children who have been removed from her care, and that she had a second child that was born drug-exposed.
>
> Mother has not paid child support as ordered.

Mother admitted she had used illegal drugs in the past and that she had a substance abuse problem. She stated that the last time she used illegal drugs was in July 2011, when she was pregnant with her youngest child. Mother admitted that she had two other children, Ransom, age 13, and Justice, age 6 months, who were also in foster care. Mother admitted that both Serenity and Justice were drug-exposed at the time of their birth. Mother admitted that she was addicted to illegal drugs when she was pregnant with Serenity, and that petitioners paid for her to go to a methadone clinic to try and help the baby. Mother testified that she had gone through a drug rehabilitation program and sought individual counseling after Justice's birth in August 2011, but this was two months after the petition to terminate was filed, and two years after the Children were removed. There was no showing that Mother had improved her circumstances to the point that it would be safe for the Children to be with her, and since they had been removed for more than two years, it would appear that such an adjustment is probably not likely.

Mother failed to visit the Children, as discussed above, and has not maintained any type of contact with them. Because of this, there could hardly be a meaningful parent/child relationship between Mother and the Children. By contrast, petitioners testified that they had a very close parental relationship with the Children, and that the Children were happy and healthy in their care. Tiashaun was doing very well in school and participated in many extracurricular activities, including basketball, track, and swimming.

Petitioners testified that they attend church as a family, read together for 20 minutes every night, and have family movie night with the Children on Fridays. Petitioners were able to provide for the Children using just Edana B.'s income, so that Jason C. could be there when Tiashaun gets home from school. Petitioners testified that they attended all school meetings and conferences, as well as practices and games for Tiashaun. Petitioners testified that Tiashaun had asked about Mother or said he missed her a couple of times, but that this had not been a real issue – Edana B. stated that she always told Tiashaun that Mother loved him. She said that they never spoke ill of her. Edana B. testified that she had contacted Parent Place after the September 2010 hearing to give them petitioners' contact information, but Mother had never requested visits.

Jason C. admitted that he had tested positive for marijuana once in 2009, but stated that he had not used drugs since. He said that his screens thereafter were clean. He testified that he was very involved in Tiashaun's education, and told him that "education opens the doors to the opportunities of life." Both petitioners testified that they tried to foster a relationship between Mother and the Children before she stopped visiting, but they had not tried to set up visits recently because of her sporadic history. Jason C. testified that they didn't want to "set Tiashuan up for failure" if Mother failed to appear. Jason C. also testified that he and his wife were very close to the Children. He testified he left his last job with Knox County Schools so he could spend more time with his family. Both petitioners testified that Tiashaun and Serenity also had a very close, loving relationship and were very protective of one another.

Regarding the other factors, the court found that Mother's prior drug use while pregnant and while the Children were in her care demonstrate neglect, and that her home was not safe. No proof was introduced about Mother's home at the time of trial. Mother testified she had been diagnosed as bipolar, which could affect her ability to parent the Children. Mother had paid only token support. Thus, considering the statutory factors and the weight of the proof, it is obvious that the evidence does not preponderate against the trial court's finding, made by clear and convincing evidence, that termination is in the best interest of the Children.

VII.

The judgment of the trial court terminating the parental rights of Mother is affirmed. Costs on appeal are taxed to appellant, Valtrella C. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., PRESIDING JUDGE