IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 14, 2012

**IN RE NATASHA A.**

**Appeal from the Juvenile Court for Davidson County**
**No. 142215      Betty K. Adams Green, Judge**

———————————————————

**No. M2012-01351-COA-R3-PT - Filed February 27, 2013**

———————————————————

The mother of the minor child at issue appeals the termination of her parental rights. The juvenile court found several grounds for terminating the mother's parental rights and that termination was in the best interest of the child. We affirm the termination of the mother's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Nicholas Perenich, Jr., Nashville, Tennessee, for the appellant, Stephanie K. A.

Leslie Curry-Johnson, Lead Counsel, Martha A. Campbell, Douglas Earl Dimond, Matthew R. Muenzen, Nashville, Tennessee, for the appellee, State of Tennessee, Department of Children Services.

**OPINION**

Stephanie K. A. is the mother of Natasha A., born in January 1996. Leonard A., now deceased, was listed as Natasha's father on her birth certificate. Stephanie K. A. ("Mother"), who is a registered sex offender,[1] has not had custody of Natasha since April 2006, when she gave temporary custody of Natasha and her other children to Desiree S. Natasha and Mother's other children, who are not at issue in this case, lived with Ms. S., but only for a couple of weeks, before Ms. S. placed them with the Tennessee Baptist Children's Home. The last time Natasha was in her Mother's custody Natasha was ten years old; Natasha is

———————————————

[1]On May 21, 1998, Mother was convicted of facilitation of rape of a child and sentenced to eight years at thirty percent in the Department of Corrections.

now seventeen years old and Mother admits she has not attempted to regain custody of Natasha since that time. She states the primary reason for not seeking to regain custody is her longstanding drug problems, specifically her cocaine addiction.

During her stay at the Children's Home, Natasha developed some issues that required hospitalization. When the hospital released her, neither the Children's Home nor Ms. S. would accept her back. Natasha could not be placed with Mother due to her lack of stable housing, extended history of drug abuse, and lengthy criminal history, therefore, on April 6, 2010, Natasha was placed in the custody of the Department. On April 9, 2010, the Department filed a petition to declare Natasha dependent and neglected and for emergency removal. The petition alleged that the current custodian could not meet the child's special needs. The parties waived the preliminary hearing and agreed that probable cause existed to sustain the emergency removal. Natasha, who remains in the Department's custody, was placed in three foster homes in the first two weeks, then she was moved to Madison Oaks Academy, a residential group home in Jackson, Tennessee, where she stayed six months. She then was placed in Paidia's Place, another group home where she stayed for six months, then she was moved to a secure facility in Bartlett, Tennessee. After Bartlett, she returned to Paidia's Place, then she briefly resided in two foster homes and then back to Paidia's place. At the time of trial, Natasha resided in the secure facility in Bartlett.

On May 27, 2010, the Department set up an initial permanency plan aimed at reunifying Natasha with Mother or exit custody with a relative. At a permanency plan hearing on May 28, 2010, in which Mother participated, the trial court ratified the initial permanency plan. The plan required Mother to do the following: remain drug free, participate in drug and alcohol treatment, undergo a parenting assessment, participate in family counseling, submit to random drug screens, obtain stable housing for six months, follow recommendations from the after care plan developed with her counselor while incarcerated, obtain stable income, comply with rules of any probation and/or parole, have regular visitation with the child, and refrain from incurring any civil or criminal charges. The juvenile court determined that the services and goals of the plan were reasonably related to the goals insofar as the plan addressed the needs of Natasha, her current placement was appropriate, and it was in her best interest because she was doing well in placement at Madison Oaks. The court also noted that Mother would have a difficult time convincing the court that Mother had changed after her eight-year history. Further, the juvenile court found that Mother used cocaine approximately ninety days ago and marijuana more recently. Also during this hearing, the juvenile court judge explained to Mother, *inter alia*, the law of abandonment and that termination of her parental rights may be a consequence of willfully failing to visit or support Natasha, and that Mother had a right to be represented by counsel at any termination hearing. Mother signed the Criteria and Procedures and acknowledged that she understood the grounds upon which a petition to terminate her rights could be based.

On June 30, 2010, with Mother's consent, Natasha was declared dependent and neglected. Several months later, on February 18, 2011, a second permanency plan was ratified but Mother did not appear or participate even though Mother was notified of the court date. The second permanency plan included the following additional requirements: Mother work towards obtaining her license or adequate transportation, keep her information accurate for the sex offender registry, inform family support workers of any possible changes in address or phone number by providing a new legitimate address or phone number within three days of such changes, cooperate with the Department, and undergo drug screening before supervised visitation. Further, adoption was added as an alternative goal. Also, during the hearing, the juvenile court determined that Mother was not substantially compliant because, *inter alia*, she had only submitted to one drug screen, she had not participated in drug and alcohol treatment, and Mother was not visiting Natasha due to her refusal to comply with the drug screens. The court additionally determined that Natasha is a special needs child and, thus, needed foster care that accommodated her special needs.

On May 6, 2011, the Department filed its petition to terminate parental rights. The grounds listed in the petition were abandonment by failure to visit, support, or provide suitable housing, Tenn. Code Ann. §§ 36-1-113(g)(1) & 36-1-102(1)(A)(i)–(ii); substantial noncompliance with the permanency plan, Tenn. Code Ann. § 36-1-113(g)(2); that the conditions which led to Natasha's removal still persist and prevent Natasha's return to Mother's care, Tenn. Code Ann. § 36-1-113(g)(3); severe child abuse, Tenn. Code Ann. §§ 36-1-113(g)(4) & 37-1-102; and that Mother had been sentenced for child abuse, Tenn. Code Ann. § 36-1-113(g)(5). The petition also listed several reasons why termination was in Natasha's best interest.

A trial on the petition was held over three days, September 19, 2011, November 8, 2011, and February 2, 2012, before the Honorable Betty Adams Green in the Juvenile Court of Davidson County, Tennessee. Those who testified included Charity Kimbrell, the Department foster care worker for Natasha, Mother, Allegra M., a family friend, and Natasha briefly testified.

Ms. Kimbrell testified regarding her involvement in the case since July 2010. According to Ms. Kimbrell, her communication with Mother had been sporadic and she was never in constant communication with her. This was because the phone numbers and addresses Mother provided were not always correct or the phone was temporarily deactivated, and on several occasions months past while the Department did not know where Mother resided or how to reach her in order to assist her.

Despite Mother's lack of communication or cooperation, Ms. Kimbrell explained that the Department attempted to assist Mother in finding suitable housing; however, obtaining suitable housing was complicated due to Mother being a registered sex offender. Ms. Kimbrell testified that she sent Mother two separate months worth of available housing listings as well as a felony friendly employer list. Ms. Kimbrell described the felony friendly employer list as a two-page list of people who had been known to hire felons in the past. Due to a number of factors, including Mother being a registered sex offender, Mother failed to obtain housing that was suitable for Natasha.

The evidence established that Mother made no attempts to visit Natasha or provide support for Natasha from January 6 to May 6, 2011, the four-month period preceding the filing of the petition. In fact, Mother did not visit or financially support Natasha at anytime after Natasha went into the Department's custody in April 2010.

The permanency plans required Mother to undergo a drug screen prior to each visitation with Natasha, however, Mother refused or failed to submit to drug screens except for one. That was on February 11, 2011 and the result was positive for marijuana use. When asked why she refused to other drug screens, Mother stated "they wanted an enormous amount of urine that I could not – I could not produce . . . . [a] lot of other times, Ms. Kimbrell would text me and I would not be even in Nashville or couldn't get to within the four hours of time I had to make arrangements to get a ride to get there." After that, the Department moved the drug testing to Columbia, closer to where Mother was residing, yet Mother failed to take any drug test in Columbia.

Although Mother received Natasha's disability benefit from the Veteran's Administration every month since the death of Natasha's father in 2006, Mother never provided any financial support for Natasha during that time, including the requisite four month period preceeding the filing of the petition.[2]

Based upon the foregoing, pursuant to an order entered on June 4, 2012, the juvenile court terminated Mother's parental rights finding that Mother willfully abandoned Natasha by failing to visit, failing to support and failing to provide suitable housing, that Mother was substantially non-compliant with the responsibilities set forth in the permanency plans, that conditions continue to exist that prevent the child from being returned to Mother's custody, and that termination was in the best interest of the child. On June 19, 2012, Mother filed this appeal.

---

[2]Shortly thereafter, the Department notified the Veteran's Administration that Mother had not had custody of Natasha since 2005; the disability benefit was stopped on May 23, 2011.

**ANALYSIS**

The party seeking to terminate parental rights must prove two elements. That party, the petitioner, has the burden of proving that there exists a statutory ground for termination. Tenn. Code Ann. § 36-1-113(c)(1); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Furthermore, the petitioner must prove that termination of parental rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). Thus, a court may terminate a parent's parental rights if it finds by clear and convincing evidence that one of the statutory grounds for termination of parental rights has been established and that the termination of such rights is in the best interests of the child. *In re A. W.*, 114 S.W.3d 541, 544 (Tenn. Ct. App. 2003); *In re C.W.W.*, 37 S.W.3d 467, 475–76 (Tenn. Ct. App. 2000)

I. GROUNDS FOR TERMINATION OF PARENTAL RIGHTS

The trial court found several grounds upon which Mother's parental rights may be terminated. We shall address two of the grounds found by the trial court, abandonment by willful failure to visit and abandonment by willful failure to support.

Tennessee Code Annotated § 36-1-113(g)(1) establishes a ground for termination of parental rights based upon abandonment as defined in Tennessee Code Annotated § 36-1-102. The definition of abandonment set forth in Tennessee Code Annotated § 36-1-102(1)(A)(i):

> "For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child . . ."

Failure to visit or support a child is "willful" when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. *In re Audrey S.*, 182 S.W.3d 838, 864 (Tenn. Ct. App. 2005). "Where the failure to visit is not willful, a failure to visit a child for four months does not constitute abandonment." *R.G.W. v. S.M.*, No. M2009-01153-COA-R3-PT, 2009 WL 4801686, at *8 (Tenn. Ct. App. Dec. 14, 2009) (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007)). "A parent who attempted to visit and maintain relations with [her] child, but was thwarted by the acts of others and circumstances beyond [her] control, did not willfully abandon [her] child." *Id.* Further, "when considering the failure of the parent to

-5-

support the child, we should determine 'that the parent is aware of his or her duty to support, has the ability to provide support, and has voluntarily and intentionally chosen not to provide support without a justifiable excuse.'" *Id.* (quoting *In re T.Z.T.*, No. M2007-00273-COA-R3-PT, 2007 WL 3444716, at \*6) (Tenn. Ct. App. Nov. 15, 2007)).

Although certain grounds for termination require the Department to provide evidence that it has made "reasonable efforts" to make it possible for the child to return home, Tennessee Code Annotated § 37-1-166(g)(4) relieves the Department of this obligation in cases involving "aggravating circumstances" as defined by Tennessee Code Annotated § 36-1-102(9), which definition includes "abandonment." *See In re C.A.H.*, No. M2009-00769-COA-R3-PT, 2009 WL 5064953, at \*4 (Tenn. Ct. App. Dec. 22, 2009) (citing *In re B.P.C.*, No. M2006-02084-COA-R3-PT, 2007 WL 1159199, at \*11 n.5 (Tenn. Ct. App. Apr. 18, 2007); *State v. D.D.T.*, No. M2006-006710COA-R3-PT, 2006 WL 2135427, at \*1 (Tenn. Ct. App. July 31, 2006)) ("Thus, . . . DCS [has] no obligation to make reasonable efforts for termination based on abandonment.").

It is undisputed that Mother did not visit or make payments toward Natasha's support during the relevant time period, January 6, through May 6, 2011; nevertheless, Mother insists that the proof does not support a finding that her failure to do so was willful. We will first examine the proof regarding visitation, then support.

Mother states her failure to visit cannot be said to be willful because Natasha was residing in Bartlett, Tennessee from January through May 2011, and Mother did not have a driver's license or reliable transportation. Ms. Kimbrell, however, testified that the Department was prepared to assist Mother with transportation in order to visit Natasha, if Mother cooperated with the drug screen requirement, but she did not.

Visitation was ordered in Natasha's May 2010 permanency plan, however, Mother's right to visitation was contingent upon Mother submitting to random drug screens. In the eighteen months between the time Natasha entered the Department's custody and the filing of the petition to terminate, Mother submitted to only one drug screen, which she failed, and Mother never visited Natasha.

The drug screens were to take place in Nashville. Mother took one drug test in Nashville, which she failed. Thereafter, Mother complained that it was too difficult for her to travel to Nashville (the record is unclear as to where Mother was residing at this time). Therefore, the Department moved the drug screens to Columbia, Tennessee, near where Mother was then living. Mother *appeared* for only one drug screen in Columbia; however, she left without giving a urine sample. Mother explained later that the testing center required too much urine and she never appeared for another drug test.

Although we understand the distance between Columbia and Bartlett made it difficult for Mother to visit Natasha on a regular basis, Mother's excuses for not visiting Natasha are disingenuous and unjustifiable. To be blunt, the reasons why Mother did not visit are that she failed to remain in contact with DCS, she failed the only drug screen she took, and she repeatedly refused to submit to any more drug screens. We also note that Mother admitted that she did not visit her other daughters, who resided in Brentwood, for over two years, and she gave no explanation for failing to visit them.

As for Mother's failure to provide support for Natasha, she oscillates between blaming the Department for her failure to support Natasha and claiming she was unable to make payments. At the hearing on September 19, 2011, Mother admitted that from the time of the death of the children's father in 2006, until May 23, 2011, she was receiving $1,700 a month in benefits from the Veteran's Administration[3] and that she provided no financial support for any of the children, including Natasha.

We, therefore, affirm the trial court's findings that the Department proved the grounds of abandonment by willful failure to visit and willful failure to support Natasha.

## II. BEST INTEREST OF THE CHILD

Having affirmed two statutory grounds for termination of Mother's rights and only one ground need be proved, it is not necessary for us to examine the other grounds; therefore, we shall determine whether it is in Natasha's best interest that Mother's rights be terminated.

The Tennessee General Assembly has provided a list of factors for the court to consider when conducting a best interest of the child analysis. *See* Tenn. Code Ann. § 36-1-113(i)(1)-(9). The nine statutory factors, which are well known and need not be repeated here, are not exclusive or exhaustive, and other factors may be considered by the court. *See In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Moreover, not every statutory factor need apply; a finding of but a few significant factors may be sufficient to justify a finding that termination of the parent-child relationship is in the child's best interest. *See In re M.A.R.*, 183 S.W.3d at 667. The child's best interest is to be determined from the perspective of the child rather than the parent. *See State Dep't of Children's Servs. v. L.H.*, No. M2007-00170-COA-R3-PT, 2007 WL 2471500, at *7 (Tenn. Ct. App. Dec. 3, 2007) (citing *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)).

---

[3]The benefit payments were for three minor children, a portion of which was for Natasha.

Natasha has not lived with Mother since 2006, Mother has made no efforts since 2006 to regain custody of Natasha, she has not visited or supported Natasha since 2010 when the Department took custody of Natasha, Mother has not resolved her longstanding drug problems, specifically, her cocaine addiction, and she is a registered sex offender. Therefore, considering these relevant factors from the child's perspective, the evidence clearly and convincingly established that it is in Natasha's best interest that Mother's parental rights be terminated.

## IN CONCLUSION

We, therefore, affirm the termination of Mother's parental rights and this matter is remanded with costs of appeal assessed against the Department of Children's Services due to Mother's indigency.

_____
FRANK G. CLEMENT, JR., JUDGE