IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 13, 2014

# IN RE: TY-SHAWN H.

**Appeal from the Juvenile Court for Johnson City**
**No. 41120      Sharon M. Green, Judge**

**No. E2013-02259-COA-R3-PT-FILED-APRIL 4, 2014**

The Juvenile Court for Johnson City ("the Juvenile Court") terminated the parental rights of Frank G. ("Father") to the minor child Ty-Shawn H. ("the Child") pursuant to Tenn. Code Ann. § 36-1-113(g)(6). Father appeals the termination of his parental rights to this Court. We find and hold that clear and convincing evidence existed to terminate Father's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(6), and that clear and convincing evidence existed that the termination was in the Child's best interest. We, therefore, affirm the Juvenile Court's order terminating Father's parental rights to the Child.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

James J. Lonon, Johnson City, Tennessee, for the appellant, Frank G.

Robert E. Cooper, Jr., Attorney General and Reporter; and, Mary Byrd Ferrara, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

## OPINION

## Background

The Child, born in January 2012, was removed from the custody of his mother only days after his birth.[1] The removal resulted from the Child's mother's positive drug screens during the pregnancy and at birth. The Child entered foster care. In May 2012, Father was convicted in federal court of conspiracy to distribute and possession with the intent to distribute 28 grams or more of cocaine base. Father received a sentence of 188 months. Ultimately, Father was legitimated as the father of the Child. In February 2013, the Tennessee Department of Children's Services ("DCS") filed a petition to terminate Father's parental rights to the Child. DCS alleged two grounds against Father: substantial noncompliance with permanency plan and the imposition of a prison sentence greater than ten years with the Child being under eight years old at the time of sentencing. Father filed a response in opposition to the petition. This matter was tried in June 2013.

Katie Wilhoit ("Wilhoit"), a case manager with DCS, testified first. Wilhoit testified that there is no meaningful relationship between Father and the Child. The Child has been in the same foster home for around 17 months. The foster family includes the Child's half-brother. According to Wilhoit, moving the Child from the foster home would have a detrimental impact on the Child. Wilhoit also testified to Father's 15 and a half year sentence for a drug-related offense.

Elizabeth Hayword ("Hayword"), Clinical Director for Foundations for Life Principals, testified next. Hayword was qualified as an expert in the field of parenting assessments and bonding assessments. Hayword conducted a bonding assessment in this case. Hayword observed the Child with the foster parents when he was about nine months old and testified to a close bond within the family. Hayword testified that the Child and his half-brother had affectionate ties. Regarding the foster family's home, Hayword testified: "[I]t was spotless. It was very clean. There were an appropriate amount of toys. The interactions were very peaceful and it seemed like a really happy home." Hayword stated that removing the Child from the foster family's home could be "very devastating and potentially harmful" to the Child.

Jonathan W. ("Foster Father") testified. Foster Father testified that the Child was brought to his family when the Child was two days old. Foster Father stated that the foster family consists of himself, his wife, their daughter, the Child, and the Child's half-brother. Foster Father testified about the Child's overall status:

---

[1]The Child's mother's parental rights also were terminated, but that is not at issue in this appeal.

He does very good. He's very attached to [his half-brother]. Of course, he's old enough now that he follows him pretty much everywhere. He's integrated into every part of our daily life. I mean, he goes everywhere we go. He loves to play, outside especially. He loves to be at the pool, in the lake, he just enjoys being outdoors. We sat outside yesterday for probably an hour watching the equipment behind us, they were raking hay, bailing hay. He's just fascinated by the big equipment. He and [his half-brother] just sat in my lap, we just sat outside and watched them. He's just interested in everything.

Foster Father stated that he and his wife would "[a]bsolutely" consider adopting the Child should he become available for adoption.

Father testified, as well. As he was in a South Carolina federal correctional facility, Father testified by telephone. Father stated that his sister was available and willing to take custody of the Child. Father testified that it was his view that the State was trying to predetermine an outcome whereby the Child would live with the foster family instead of Father's family. Continuing his testimony, Father stated he is willing to renounce his parental rights to the Child if his sister is allowed to raise the Child. Father also expressed his desire for the Child to "keep my bloodline and name for future generations." According to Father, this goal of his to perpetuate his ancestral legacy could be effectuated if his sister instead of the foster family raised the Child.

In September 2013, the Juvenile Court entered its order finding and holding that clear and convincing evidence existed to terminate Father's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(6), and that clear and convincing evidence existed that the termination was in the Child's best interest.[2] We quote from the Juvenile Court's detailed order:

There is clear and convincing evidence that Respondent [Father] is incarcerated on a sentence of ten (10) or more years for the criminal act of distribution and possession with the intent to distribute a quantity of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, from the United States District Court, Eastern District of Tennessee at Greeneville on May 31, 2012. He is currently serving a sentence of one hundred and eighty-eight (188) months, or approximately fifteen and one half (15 ½) years. A certified copy of the judgment from the United States District Court, Eastern District of Tennessee

[2]The Juvenile Court ruled that DCS had not proven by clear and convincing evidence the ground of substantial noncompliance with permanency plan.

at Greeneville . . . was properly admitted into the evidence in this cause. [The Child] was four (4) months old at the time that the sentence was imposed upon [Father]. Based upon the age of the minor child and the incarceration of [Father] for conviction of a criminal act resulting in a prison sentence in excess of ten (10) years, the Court finds that the State has proven, by clear and convincing evidence, the statutory ground for termination of parental rights as set out in Tennessee Code Annotated, Section 36-1-113(g)(6).

\*\*\*

The Court has considered the statutory factors set out in Tennessee Code Annotated, Section 36-1-113(i) and has determined that there is clear and convincing evidence that it is in the best interest of the child for the parental rights of [Father] to be terminated. Father has not made such an adjustment of circumstance, conduct or conditions as to make it safe and in the child's best interest to be in his home. The Father was incarcerated at the Washington County Detention Center as a federal detainee when the child was placed in the protective custody of DCS and he has remained incarcerated, following his conviction for possession and selling crack cocaine, when the child was four (4) months old. Respondent [Father] is incarcerated on a sentence of one hundred and eighty-eight (188) months from the United States District Court, Eastern District of Tennessee at Greeneville . . . . Father is unable, due to his incarceration, to develop a relationship with the child and to change his circumstances. His incarceration precludes him in developing a relationship with the child during his formative years.

\*\*\*

Due to his incarceration, Respondent [Father] has not maintained regular visitation or contact with the child.

The child has been in the custody of the Department of Children's Services since the child was four (4) days old. The Order from the January 12, 2012, hearing in the dependency and neglect proceedings reflected that [Father] was a federal detainee in the Washington County Detention Center at that time . . . . [Father] does not have a meaningful relationship with the child and cannot be expected to have a meaningful relationship with the child for many years.

-4-

Changing caregivers at this stage of the child's life would have a detrimental effect on the child. Specifically, the Court finds that the minor child has been in foster care for almost eighteen (18) months, and has been in the same foster home since he was two (2) days old. Further, the Court finds that the child's biological maternal half-brother also resides in the foster home with the minor child. The Court finds that the minor child has a genuine attachment for his half-brother, and that he interacts well with him as a sibling. [The Child] has never lived apart from his half-brother, after his discharge from the hospital following his birth. Based upon the testimony of the bonding assessor, Elizabeth Hayword, whom the Court holds to be a credible witness, the minor child has a parental bond with his foster parents, and that removing the minor child from his current foster home would be devastating to him. The child has developed a strong bond with his foster parents, who wish to adopt him. The child is very happy, interactive, and comfortable with all of the family members in the foster home. The Court further finds that the foster home presents an ideal living situation for the minor child. The foster family has provided a safe, stable, and nurturing home to the child. As stated in the bonding assessment, the Court finds that the "family as a whole seems to have a strong bond, have a nurturing and loving relationship and a strong foundational core." As stated in the bonding assessment, the Court finds that the child considers the foster home to be his home and the foster family to be his family. The Court also finds that this placement is appropriate for the minor child. The Court finds that the foster father testified at trial that, should the minor child become available for adoption, he and the child's foster mother would be willing to adopt him. It is in the child's best interests for his Father's parental rights to be terminated so that he may be adopted by two loving and caring foster parents and live in a family containing his biological half-brother, with whom he shares a significant and loving bond.

(Format modified). Father appeals the termination of his parental rights to the Child.

## Discussion

Though not stated exactly as such, Father raises one issue on appeal: whether the Juvenile Court erred in finding and holding that it was in the Child's best interest for Father's parental rights to be terminated. Although Father does not appeal grounds for terminating his parental rights, we nevertheless also will address whether the Juvenile Court erred in finding and holding that a ground existed to terminate Father's parental rights to the Child pursuant to Tenn. Code Ann. § 36-1-113(g)(6).

-5-

Our Supreme Court reiterated the standard of review for cases involving termination of parental rights stating:

> This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

*In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006).

In *Department of Children's Services v. D.G.S.L.*, this Court discussed the relevant burden of proof in cases involving termination of parental rights stating:

> It is well established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). "However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *Id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)).
>
> Termination of parental or guardianship rights must be based upon a finding by the court that: (1) the grounds for termination of parental or guardianship rights have been established by clear and convincing evidence; and (2) termination of the parent's or guardian's rights is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c). Before a parent's rights can be terminated, it must be shown that the parent is unfit or substantial harm to the child will result if parental rights are not terminated. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Similarly, before the court may inquire as to whether termination of parental rights is in the best interests of the child, the court must first determine that the grounds for termination have been established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c).

*Dep't of Children's Servs. v. D.G.S.L.*, No. E2001-00742-COA-R3-JV, 2001 Tenn. App. LEXIS 941, at **16-17 (Tenn. Ct. App. Dec. 28, 2001), *no appl. perm. appeal filed*. Clear and convincing evidence supporting any single ground will justify a termination order. *E.g., In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

We first address whether the Juvenile Court erred in finding and holding that a ground existed to terminate Father's parental rights to the Child pursuant to Tenn. Code Ann. § 36-1-113(g)(6). Tenn. Code Ann. § 36-1-113(g)(6) (Supp. 2013) provides the following as a ground for terminating parental rights:

> The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

The clear and convincing evidence in the record on appeal shows that Father had received a sentence totaling over ten years and that the Child was under the age of eight at the time the sentence was entered. As such, the Juvenile Court did not err in finding and holding that clear and convincing evidence existed that a ground was proven to terminate Father's parental rights to the Child pursuant to Tenn. Code Ann. § 36-1-113(g)(6).

We next address whether the Juvenile Court erred in finding and holding that it was in the Child's best interest for Father's parental rights to be terminated. At trial and on appeal, Father has argued that his family–namely, his sister–ought to raise the Child. Therefore, according to Father, the Juvenile Court erred in finding that it was in the Child's best interest for Father's parental rights to be terminated.

Tenn. Code Ann. § 36-1-113(i) provides a number of factors relative to this issue:

> (i) In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
>
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for

such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i) (Supp. 2013).

The Juvenile Court made detailed findings regarding the issue of the Child's best interest as quoted above. Notwithstanding Father's argument that his sister should raise the Child, the evidence reflects that the Child already is thriving in the foster family home alongside his half-brother. We find, as did the Juvenile Court, that uprooting the Child from this positive environment could prove devastating to the Child. Meanwhile, given Father's long prison sentence, there is little prospect of Father forging any kind of genuine parental relationship with the Child in the near future. Father's desire that the Child be his legacy

must yield to what is in the Child's best interest. The evidence in the record on appeal does not preponderate against the Juvenile Court's findings made under the clear and convincing evidence standard, and we find no error in the Juvenile Court's finding that it is in the Child's best interest for Father's parental rights to be terminated.

As a ground to terminate Father's parental rights was proven by clear and convincing evidence, and it was proven by clear and convincing evidence that the termination of Father's parental rights was in the Child's best interest, we affirm the Juvenile Court's judgment terminating Father's parental rights to the Child.

## **Conclusion**

The judgment of the Juvenile Court is affirmed, and this cause is remanded to the Juvenile Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Frank G., and his surety, if any.

_____
D. MICHAEL SWINEY, JUDGE