# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 8, 2015

## IN RE E.T.P.

### Appeal from the Juvenile Court for Knox County
### No. 47546     Timothy Irwin, Judge

### No. E2015-00298-COA-R3-PT-FILED-SEPTEMBER 25, 2015

In this parental termination case, A.J.S.P. (Mother) appeals the termination of her rights to her minor son, E.T.P. (the Child).  After the Child was placed in state custody and adjudicated dependent and neglected, custody was awarded to a non-relative. Subsequently, physical custody was returned to the Department of Children's Services (DCS).  At that time, both parents were incarcerated.  As to Mother, DCS filed a petition to terminate[1] her rights to the child based on her wanton disregard for the Child's welfare. After a trial, the court granted the petition based on its findings, said to be made by clear and convincing evidence, that (1) grounds for termination exist and (2) termination is in the best interest of the Child.  On appeal, Mother challenges only the court's best interest determination.  We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Jennifer S. Bjornstad, Knoxville, Tennessee, for the appellant, A.J.S.P.

Herbert H. Slatery, III, Attorney General and Reporter, and Ryan L. McGehee, Assisant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

---

[1] The State also sought to terminate the rights of J.W.P., the Child's biological father. J.W.P. voluntarily surrendered his parental rights prior to trial.

# OPINION

## I.

The Child was born on December 26, 2002. In November 2010, DCS was summoned to the family's home after a two-year-old sibling of the Child was left unattended outside. An investigation revealed that, in all, seven children were living in the filthy, bug-infested home, with little or no supervision. Mother and Father tested positive for numerous drugs. As a result of the parents' drug abuse and neglect, all of the children were removed. Ultimately, the Child and two siblings were taken into temporary state custody, while the other four children were placed with relatives. DCS reviewed the criteria for termination of parental rights with Mother. The Child began a trial home placement with a family friend, K.D., in March 2011. In September 2011, full custody of the Child was awarded to K.D. Mother and Father were granted supervised monthly visits.

In April 2012, Mother was convicted pursuant to her guilty pleas to felony charges, the commission of which occurred after the Child's removal. She pleaded to two counts of aggravated robbery and one count of burglary. She was sentenced to an effective term of ten years in prison. Prior to the time of the offenses, Mother had already been tasked with completing certain requirements under permanency plans established for two of the Child's siblings who then remained in DCS custody.

In 2014, K.D. gave physical custody of the Child to the Child's maternal aunt and uncle after K.D. became financially unable to support him. In May 2014, after the aunt and uncle had decided that they could not raise the Child, DCS took temporary custody of the Child, who was subsequently placed in foster care with a goal of adoption.[2] The following month, the Child was adjudicated dependent and neglected. To that end, in July 2014, DCS filed its petition to terminate parental rights.

Trial was held in January 2015. At that time, the Child was twelve. Days before the hearing, he was moved from his previous foster care placement to another pre-adoptive home. His case worker testified that the Child had behavioral issues, particularly in dealing with his peers, but was otherwise a happy, healthy child. Through his case worker, the Child expressed his wish to be adopted in short order rather than to return to his parents. Mother participated in the hearing via telephone from prison where she had been incarcerated for the past three years. She admitted that she continued to use drugs after the Child's removal in 2010, including on the night she committed the crimes that ultimately led to her incarceration. Mother testified that she had been sober

---

[2] The record indicates that all of the Child's siblings have been adopted.

since entering prison and had taken courses on parenting, substance abuse, and other topics while incarcerated. Mother believed that she would be able to parent the Child properly upon her release in two to three years.

At the conclusion of the proof, the trial court terminated Mother's parental rights on the ground of abandonment by wanton disregard. *See* Tenn. Code Ann. § 36-1-102(1)(A)(iv) (Supp. 2015). The court further found that termination was in the Child's best interest. The court said that both findings had been proven by clear and convincing evidence. Mother filed a timely notice of appeal.

## II.

Mother raises a single issue for our review:

> Whether the trial court erred in finding by clear and convincing evidence that termination of the parental rights of the Mother was in the best interest of the [C]hild.

## III.

### A.

As we have noted, Mother challenges only the trial court's determination that severing her parental rights is in the Child's best interest; she does not contest the finding that grounds for termination exist. We are mindful, however, that before terminating a parent's rights, a court must determine that two things have been clearly and convincingly proven: (1) at least one statutory ground exists, and (2) termination is in the best interest of the child. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). On our review, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed de novo upon the record accompanied by a presumption of correctness unless the preponderance of the evidence is against those findings. *Id*.; Tenn. R. App. P. 13(d). Questions of law are reviewed de novo with no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

### B.

Despite Mother's apparent waiver of the issue, we have thoroughly reviewed the evidence relative to the trial court's finding of abandonment by wanton disregard pursuant to § 36-1-102(1)(A)(iv). That section provides, with respect to a parent who is

incarcerated at the time a termination petition is filed, that abandonment occurs when the parent "engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child." Here, the trial court expressly found that "prior to incarceration, [Mother] engaged in conduct which exhibits a wanton disregard for the welfare of the child." The proof at trial showed that after she lost custody of the Child and his siblings, Mother chose to continue using drugs rather than working to reunite her family. Within months after the Child was placed temporarily with a non-relative, Mother's drug use admittedly contributed to her criminal activities, resulting in a lengthy prison sentence and, therefore, a long absence from the Child. This Court has observed that a "parent's decision to engage in conduct that carries with it the risk of incarceration is itself indicative that the parent may not be fit to care for the child." *In re Audrey S*., 182 S.W.3d 838, 866 (Tenn. Ct. App. 2005). Further, it is well established "that probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *Id*. at 867-68 (citations omitted). In short, the evidence does not preponderate against the trial court's termination of Mother's rights on the ground of abandonment by wanton disregard for the Child's welfare.

C.

Turning our focus to the best interest of the Child, Mother contends that the court erred by relying almost exclusively on the fact of her incarceration. Mother asserts that the trial court failed to take into account other factors. In particular, Mother contends that the trial court should have given greater weight to the steps she had taken while incarcerated, steps that, according to her, indicate she has made such an adjustment of circumstances that it would be safe for the Child to be returned to her upon her release. Mother adds that the Child's placement is presently "uncertain" and unstable, given his transfer to a new foster home just before trial.

On our review, we are guided by the non-exclusive list of factors set forth at Tenn. Code Ann. § 36-1-113(i) (Supp. 2015). The listed factors are as follows:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting

4

adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). In addition, this Court has observed:

Every factor need not be applicable in order for the trial court to determine that it is in the best interest of the child for a parent's right[s] to be terminated. The weight and relevance of these factors may vary from case to case and it is possible that a single factor is determinative. In evaluating the issue of best interests, the court must remember that any conflict

5

between the best interests of a child and the adult parent shall always be resolved to favor the rights and the best interests of the child.

*In re Payton A.D.L.*, No. E2012-00090-COA-R3-PT, 2012 WL 2336256, at \*5 (Tenn. Ct. App. E.S., filed June 20, 2012) (internal citations and quotation marks omitted).

In the case at bar, the trial court set out its best interest analysis as follows:

[Mother] has not made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in her home despite reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible. She remains incarcerated. Whether she has made a long-term adjustment remains to be seen once she is released and has an opportunity to prove herself in the community. Due to her circumstances, [Mother] has not been able to maintain regular visitation or other contact with the [C]hild. [Mother] has shown neglect toward this child. She is without a healthy and safe physical environment to offer [the Child]. Prior to her arrest, [Mother] engaged in criminal activity and in such use of alcohol or controlled substances as may render [Mother] consistently unable to care for the [C]hild in a safe and stable manner.

The trial court's findings make it clear to us that more than Mother's incarceration was considered. At the same time, the effects of her lengthy prison term with regard to nearly all of the best interest factors cannot be understated – for the time being, Mother is simply unavailable to build and maintain a healthy, meaningful, supportive parent/child relationship or environment or to demonstrate that she has gained the ability and willingness to do so in the future. The progress and accomplishments Mother has made while incarcerated are commendable and we credit them just as the trial court did. However, as the trial court aptly observed, "[t]hat is not the point." Once a parent has been found to be unfit based on the establishment of a statutory ground for termination, then the interests of the parent and the child diverge. *In re Audrey S*., 182 S.W.3d at 877. As a result, when a court considers the best interest issue, it does so from the perspective of the child, not the parent. Here, the Child has been out of Mother's care for years and Mother remains unavailable. The Child has been in at least three other homes since his removal, but heads into his teenage years hopeful that he will soon find a permanent, loving home. Under these circumstances, we agree with the trial court's view

6

that "[i]t's not fair to [the Child] to make him wait."

Based on the foregoing, we conclude that there is clear and convincing evidence to support the trial court's conclusion that the Child's interest is best served by permanently severing Mother's parental rights and thereby freeing the Child for adoption.

IV.

The judgment of the trial court terminating Mother's rights to the Child, E.T.P., is affirmed. Costs on appeal are assessed to the appellant, A.J.S.P. This case is remanded, pursuant to applicable law, for enforcement of the trial court's judgment and the collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE